**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND**

| | |
|---|---|
| **TERRY HAZELWOOD** | Case No: 0:22-CV-00013-KKC |
| **Plaintiff/Counterclaim Defendant** | Judge: Karen K. Caldwell |
| | Magistrate: Edward B. Atkins |
| v. | |
| **ESTATE OF GEORGE A. GOUSTAS, deceased, et al.;** | **DEFENDANTS' _DAUBERT_ MOTION TO EXCLUDE PLAINTIFF'S EXPERT DR. WILLIAM SMOCK** |
| **Defendants** | |
| _AND_ | |
| **ANDREAS A. GOUSTAS, Administrator of the Estate of George Goustas** | |
| **Counterclaimant and Third-Party Plaintiff** | |
| v. | |
| **HENDRIX-ISA, LLC** | |
| **Third-Party Defendant** | |

Third-Party Defendant Hendrix-ISA, LLC and Counterclaim Defendant Terry Hazelwood ("Defendants"), by and through counsel, move to exclude the expert opinion testimony of Dr. William Smock for the reasons set forth herein. Dr. Smock was previously disclosed as a biomechanical expert testifying on behalf of Counterclaimant/Third-Party Plaintiff Andreas A. Goustas, Administrator of the Estate of George Goustas ("Plaintiff" or "Goustas"). Dr. Smock's testimony should be excluded pursuant to *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), FED.R.EVID. 702, and cases interpreting same.

1

**I.     INTRODUCTION**

This case arises out of a fatal motor vehicle accident on I-64 in Boyd County, Kentucky. The collision occurred after Plaintiff's decedent George Goustas apparently parked his car,[1] a 2012 Nissan Sentra sedan, in the middle of the dark roadway. Defendant Terry Hazelwood approached in his tractor trailer, a 2020 Freightliner, from behind Plaintiff, attempted to avoid a rear-end collision, but ultimately impacted a portion of the rear of Plaintiff's Nissan Sentra. The collision resulted in the death of Plaintiff and injuries to Hazelwood. Hazelwood initiated this lawsuit by asserting personal injuries against Plaintiff, who in turn filed claims against Defendants. Only Plaintiff's claims remain pending now.

Plaintiff identified Dr. William Smock as a biomechanical expert witness for trial. Dr. Smock is expected to testify, in short, (1) that if Hazelwood had been driving slower, then Goustas would have survived; (2) that Goustas's failure to wear a seatbelt is immaterial to his injuries and death; (3) that information provided to the Boyd County Grand Jury was misleading; and (4) that Goustas was *not* impaired from cocaine but Hazelwood *was* impaired. *See* Dr. Smock's Report and CV, attached collectively as Exhibit A.

Dr. Smock should be excluded from testifying at trial because even though he holds himself out as a biomechanical expert, he admits that he did not do a single calculation, measurement, or simulation to determine how Goustas's body actually moved within the vehicle during impact. Smock Depo. at 33, attached as Exhibit B. Dr. Smock does not even know where Goustas's body was located *before* impact. *Id.* at 38-40. It might not matter to Dr. Smock because he also does not know the size of Goustas's body and he did not bother to try to determine the measurements

---

[1] The word "apparently" is used because no witness knows what happened before the accident: where Goustas was going, where he was coming from, how long he had been in the road, why he was in the road stopped or moving extremely slowly.

2

of the interior of Goustas's car, either. *Id.* at 6-7. That's exactly what a biomechanical expert is expected to do. The *only* research and analysis that Dr. Smock did do was to look up other collisions in the online National Highway Transportation Safety Administration (NHTSA) "CIREN" database. *Id.* at 19. As will be demonstrated below, all three of those other collisions have zero in common with the accident in this case.

Dr. Smock's opinions are unreliable and are not based on sufficient facts or evidence to be admissible. Expert discovery is now closed. It is now timely and appropriate to exclude Dr. Smock's opinions for the reasons below.

## II. LEGAL STANDARD

Before a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" may testify, the party seeking to call the witness, here the Plaintiff, must prove: (1) that the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) that the testimony is based on sufficient facts or data; (3) that the testimony is the product of reliable principles and methods; and (4) that opinion reflects a reliable application of the principles and methods to the facts of the case. FED.R.EVID. 702(a)-(d). These factors were dealt with in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).

Expert testimony must be both relevant and reliable. In determining whether a proffered expert's testimony is reliable, courts consider: "the testability of the expert's hypotheses, whether the expert's methodology has been subject to peer review and publication, the known or potential rate of error with respect to the expert's methodology, and whether the methodology is generally accepted in the scientific community." *Rose v. Truck Ctrs., Inc.*, 388 F. App'x 528, 535 (6th Cir.

2010). "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008).

Here, Dr. Smock should be excluded from trial because his opinions they are not based on sufficient facts or data; they are not the product of reliable principles and methods; and, in the instance of his criticisms of the prosecution of Hazelwood, the opinions exceed his area of expertise. Dr. Smock's opinions do not reflect a reliable application of the principles and methods to the facts of this case and they should be excluded.

### III. ARGUMENT

#### A. Dr. Smock is wrong: Seatbelts matter.

Plaintiff's expert Dr. Smock admits that Goustas was not wearing his seatbelt at the time of the impact while parked in the dark interstate. *See* Smock Depo. at 14 ("There's no evidence that he had it on at the time of impact."). In an effort to avoid any seatbelt defense or criticisms of Goustas for his failure to wear a seatbelt, as required by law, Dr. Smock offers the opinion that in this instance, the seatbelt would not have made a difference. *Id.* at 31-32. There was no autopsy, but Dr. Smock nevertheless opines that Goustas died because of internal bleeding. *Id.* at 16-17. Dr. Smock opines that the seatbelt "may have, but it may not" have significantly altered Goustas's body's movement inside the vehicle at impact. *Id.* at 60-61. Again, Dr. Smock does not know the interior dimensions of the Nissan sedan or the size of Goustas to be able to opine how Goustas's body moved inside the vehicle at impact. *Id.* at 33. Dr. Smock believes the seatbelt was "designed to prevent forward motion. In this case, we have rearward motion where Mr. Goustas is going to move toward the rear of the vehicle. We know that seatbelts are not designed for rear impacts,

4

particularly when you have bending of the seat back. … And so, the wearing or not wearing of a seatbelt, Mr. Goustas is going to have similar injuries[.]" *Id.* at 31-32.

Dr. Smock is wrong. According to the same National Highway Traffic Safety Administration cited by Dr. Smock, wearing a seatbelt is "[o]ne of the safest choices drivers and passengers can make is to buckle up."[2] Seatbelts were designed for both front *and* rear impacts. Seatbelts *do* provide protection, *even in rear-end collisions*.[3] Dr. Smock's opinion that Goustas's failure to wear a seatbelt does not make any difference in this case is premised on demonstrably incorrect information: that seatbelts are not designed for rear impacts and offer no protection. This flies in the face of the NHTSA and other research and it is incorrect. Because Dr. Smock's opinions are based on this incorrect premise, his testimony should be excluded from evidence. Dr. Smock should not be permitted to offer an expert opinion that Goustas's failure to use a seatbelt is immaterial or that, in this instance, a seatbelt would not have made a difference. Seatbelts do matter.

**B. Smock's opinions rely on clearly incomparable NHTSA crash data.**

Dr. Smock opines that if Defendant Hazelwood had operated his truck at 55 miles per hour, then Plaintiff Goustas would have survived the rear-end impact with Goustas's car in the dark roadway. Smock Depo. at 16. To support his opinions, Dr. Smock bases his opinion entirely on

---

[2] U.S. Dep't of Transportation, National Highway Traffic Safety Administration, "Seat Belt Safety: Buckle Up America" available at https://www.nhtsa.gov/vehicle-safety/seat-belts (last accessed March 14, 2024), attached as Exhibit C.

[3] *See e.g.* Imler, S., Heller, M., Raasch, C., Watson, H. et al., "The Effect of Rear Impact Collision Delta-V and Restraint Status on Injury Outcome," SAE Technical Paper 2014-01-0524, 2014 ("**The risk of sustaining injury in rear impact collisions is correlated to collision severity as well as other factors such as restraint usage.**"); *see also* James MB, et al. *SAE Transactions.* Vol. 100 (1991), pp. 2019-2027; Chen H, et al. *Traffic Injury Prevention* (2022) Vol. 23, No. 4, pp.176-180; *see also* Viano DC, et al. *Traffic Injury Prevention.* Vol. 19 (2018), pp. 54-59, attached collectively as Exhibit D.

5

his review of crash data found in a database, the "NHTSA CIREN database," which he claims provides proof that, at lower speeds, Goustas would have survived the event. *See* Dr. Smock Report, attached as Exhibit A. According to Dr. Smock, because there are case studies in the CIREN database suggesting that others have survived rear-end collisions at lower speeds, then Goustas would have likewise survived if Hazelwood's speed had been slower.

To be clear, the *only* research and analysis that Dr. Smock did in this case was to look up other collisions in the National Highway Transportation Safety Administration (NHTSA) "CIREN" database. *Id.* at 19. Dr. Smock did no calculations or simulation. *Id.* at 33. Specifically, Dr. Smock compared Goustas's collision with three case studies he found within the CIREN database, identified as "Case 39," "Case 91," and "Case 154." *See* Smock Report, Exhibit A. Excerpts of the lengthy case studies are attached for reference here as Exhibit E, in relevant parts only. According to Dr. Smock, these three case studies "support the survivability of rear-end impacts at lower speeds." *Id.* Dr. Smock uses this data to conclude that, if Hazelwood had been operating his tractor trailer truck at 55 mph, then Plaintiff Goustas would have survived. *Id.* at 16. This is the sole basis for that opinion.

The problem with Dr. Smock's opinion is that each of the three case studies relied upon are very obviously and clearly incomparable to the subject accident with Goustas. In other words, Dr. Smock's opinions and analysis in this case are not reliable; they are not "based on sufficient facts or data;" and his testimony does not "reflect[] a reliable application of the principles and methods to the facts of the case" as required by FED.R.EVID. 702.

True, all three case studies, Case 39, Case 91, and Case 154 involved rear-end collisions, but the similarities with the Goustas collision end there. For starters, all three case studies, Case

6

39, Case 91, and Case 154 each involve individuals wearing seatbelts and surviving. *Id.* at 30-31. Goustas was not wearing a seatbelt and did not survive.

"Case 39" is obviously not comparable to the subject accident here. Dr. Smock relied on Case 39, even though it involved a 2011 Ford Fusion (not Goustas's 2012 Nissan Sentra). *See* Case 39, Exhibit E. Case 39 also involved a collision between four vehicles in traffic – not two vehicles in a dark interstate, like at issue here. *Id.* Case 39 involved a 68-year-old female, not a male like Goustas. *Id.* Case 39 also involved the injured person's car being pushed into and under a semi trailer after being rear-ended. *Id.* Nothing of the sort happened here, in this case.

"Case 91" from the database is also obviously dissimilar and should not have been relied upon by Dr. Smock. Case 91 involved a female driver in a 2011 Toyota RAV4, a compact utility vehicle bearing no resemblance to Goustas's 2012 Nissan Sentra sedan. *Id.* In Case 91, the vehicle was rear-ended by a 2013 Ford Explorer SUV, far different than Hazelwood's tractor-trailer commercial truck. *Id.* Case 91 also involved a three-vehicle collision, unlike here. *Id.*

Like the other two case studies, "Case 154" was also relied upon by Dr. Smock but is just as obviously incomparable. Case 154 involved a female driver, not a male like Goustas, and it involved a different car, a Volkswagen Jetta, rather than Goustas's 2012 Nissan Sentra sedan. *Id.* at 31; *see also* Case 154, Exhibit E. Case 154 involved three cars rather than the two vehicles involved in this matter. *Id.* In Case 154, a 2004 Nissan Murano crossover vehicle (*e.g.* not a tractor-trailer like Hazelwood's) rear ended a Volkswagen, causing it to collide with a third vehicle. *Id.* The differences between Case 154 in the database and the subject collision here are obvious and striking. Dr. Smock should not have relied on Case 154 either because it has no similarities to this accident. His opinions based on Case 154 and the other case studies referenced are not reliable.

The occupants in each of the case studies were in the driver's seat. Dr. Smock can only *assume* that Goustas was in the driver's seat. *Id.* at 38-40. Dr. Smock did no analysis to try to determine how Goustas moved within the vehicle or to determine Goustas's size compared to the interior space of the Nissan sedan to even know if it was possible for Goustas to be pushed over the seatback and into the seatback. *Id.* Dr. Smock admits these are all assumptions he is making based on the police officer's investigation, but the problem there is that police investigators only found Goustas in the backseat. *Id.* at 39-40.

Dr. Smock's entire analysis in this case is based on his review of these three completely different case studies. Dr. Smock could have referenced or looked to other NHTSA databases for other data, for example the FARS database or the NASS. *Id.* at 35-36. He elected not to do so. He did no calculations, no autopsy (there was none), and no simulation of the accident. Instead, he relied on these three inapposite case studies from a single database that have no similarity to the subject accident. The Rules of Evidence require more of experts. Dr. Smock's opinions should be excluded as a result of this glaring error in his analysis and because his opinions are not based on sufficient data. His opinions should be excluded.

**C. Smock's toxicological opinions should be excluded.**

Like Plaintiff's toxicological expert Henry Spiller,[4] Plaintiff's biomechanical expert Dr. Smock also opines that Goustas was conveniently not under the influence of any intoxicants (despite his drug test results indicating prior cocaine use) while Defendant Hazelwood *was impaired* based on his drug test results. *See* Dr. Smock Report, Exhibit A.

---

[4] Plaintiff's toxicological expert, Henry Spiller is the subject of Defendants' separately filed Motion to Exclude for reasons set forth therein.

Dr. Smock's toxicological opinions and interpretation of each drivers' drug tests should be excluded from trial because they are unreliable and not based on sufficient evidence.

With respect to Goustas, Dr. Smock testified that Goustas's drug test results found the presence of a cocaine metabolite. Smock Depo. at 8. Dr. Smock agreed that the presence of the metabolite indicated "prior or remote" cocaine use. *Id.* at 8. Similar to with Hazelwood, Dr. Smock admits that he does not know *when* Goustas last took cocaine, *how* Goustas took the cocaine (smoking, injecting, or otherwise), or *how much* he took. *Id.* at 8-10. Dr. Smock even admitted that it is possible that Goustas used cocaine just two to three hours before the accident. *Id.* at 12-13. Dr. Smock admits that "[t]he rate of metabolism is going to vary from person to person" and some "may metabolize cocaine at a high rate and he does it at a low rate" for example. *Id.* at 12. Dr. Smock admits that "[a]ll we know is what was present at the time the blood was drawn." *Id.* at 14. But the blood was drawn two hours after the collision. Based on his testimony, it is clear that Dr. Smock does not know if Plaintiff was using cocaine at or just before the time of the collision. Nevertheless, Dr. Smock still opines that Goustas was not impaired from using cocaine at the time of the collision simply because there was no cocaine found in his drug test results hours after the collision. But again, even Dr. Smock himself also admits that it is possible that Goustas used cocaine just two to three hours before the accident. *Id.* at 12-13. Dr. Smock's opinions concerning Goustas's cocaine use do not meet FED.R.EVID. 702(a)'s requirement that the testimony "help the trier of fact to understand the evidence." He simply does not know the most important information to enable him to offer these opinions.

With respect to Hazelwood, Dr. Smock admitted during his deposition, that he had <u>zero evidence</u> that Hazelwood was impaired or displaying any of the known signs and symptoms of impairment. *Id.* at 63-64. Like Spiller, Dr. Smock does not know when Hazelwood supposedly

9

ingested methamphetamine, how much he took, or the method he took it such as be smoking or injecting it.  *Id.* at 64.  Dr. Smock does not know if Hazelwood was a habitual user of methamphetamine.  *Id.* at 65.  Dr. Smock also guessed that Hazelwood used methamphetamine within the last 12 hours but then backed down, admitting that actually, "I can't tell you when[.]" *Id.* at 67.  As with Goustas's drug test results and cocaine use, Dr. Smock goes too far.  His opinions concerning both Goustas and Hazelwood's drug test results and impairment are not supported by sufficient facts or evidence and should be excluded from evidence pursuant to FED.R.EVID. 702.

### D. Smock *assumed* injuries and the cause of death.

No autopsy was performed on decedent Goustas.  According to Dr. Smock, the Death Certificate lists the cause of death generically as "Multiple Traumatic Injuries" due to "MCV (motor vehicle collision)."  *See* Smock Report, Exhibit A.  No specific injuries, fractures, or conditions are identified.

Though it is not listed as the cause of death in any records, Dr. Smock nevertheless opines that Goustas actually died from internal bleeding.  Curiously, Dr. Smock also testified that Goustas would have survived if Hazelwood had been driving slower, but he also admits that it was still "possible that he could've had internal bleeding at 55 [mph]" also.  *Id.* at 16-17.

Dr. Smock opines that Goustas died of internal bleeding based on photographs of Goustas's abdomen that appear "slightly distended, which would indicate some sort of internal bleeding[.]" *Id*. at 16-17.  Dr. Smock does not know how much blood loss Goustas experienced.  *Id.* at 17.  Dr. Smock admitted that, even with the photograph of the body, "we don't" know if there was not just a bowel blockage or some other internal injuries as opposed to the accumulation of blood in the abdominal cavity.  *Id.* at 17-18.  Dr. Smock does not know which organ system was damages within Goustas.  *Id.* at 42-43.  Dr. Smock opines that Goustas would have survived if Hazelwood

had been going slower, but he also admits that he does not know if Goustas's vehicle was stopped or moving. *Id.* at 14. He admits that if the vehicle was moving, then that would have an effect on the "delta V" (that is, the change in velocity) experienced by Goustas. *Id.* at 14-16.

Instead, Dr. Smock bases his opinion on a photograph of Goustas's abdomen and Dr. Smock's own experience suggesting simply that abdominal trauma is common. *Id.* at 18. According to Dr. Smock, because abdominal trauma is common in motor vehicle accidents, it must be why we see a "slightly distended abdomen" in this case. But, of course, there mere fact that abdominal injuries or internal bleeding is common or that it often results in a distended abdomen in other accidents is not necessarily evidence that Goustas actually experienced those injuries here, especially where other conditions can also cause a distended abdomen, as Dr. Smock readily admits. *Id.* at 17-18. When asked about medical literature supporting his theory, Dr. Smock admits he had consulted none. *Id.* at 18-19. Dr. Smock's expert analysis really is that simple – it looks like Goustas had a slightly distended abdomen, therefore he must have died as a result of internal bleeding. *Id.* at 16-20.

Even an otherwise qualified expert must abide by FED.R.EVID. 702, which requires opinions to be based on "sufficient facts or data" and so long as it "reflects a reliable application of the principles and methods to the facts of the case." Here, Dr. Smock does not meet the requirements of Rule 702 and should be excluded. Dr. Smock is guessing, speculating that because internal bleeding is common in car accidents, then Goustas must have also suffered from injuries. This analysis does not require "scientific, technical, or other specialized knowledge" required of experts. Dr. Smock's opinions should be excluded from trial.

### E. Smock's criticisms concerning the failure to indict Hazelwood should be excluded.

To offer expert opinion testimony, an expert must be qualified by "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." FED.R.EVID. 702(a). While Dr. Smock may be a qualified medical doctor or biomechanical expert, Dr. Smock is certainly not an attorney or even a paralegal. It should be beyond dispute that he is not qualified to offer expert opinion testimony in this case criticizing the Commonwealth of Kentucky's presentation of evidence to a grand jury in Boyd County, Kentucky as he intends to do here.

Specifically, Dr. Smock opines in his report that "some of the case information presented to the Boyd County Grand Jury by the Kentucky State Police was inaccurate and misleading." *See* Dr. Smock Report, attached as Exhibit A. But at his deposition, Dr. Smock plainly admitted that he does not even know what information was actually presented to the Boyd County Grand Jury by the Commonwealth's attorney or Kentucky State Police. Smock Depo. at p. 58. Dr. Smock's criticism is premised on his assumption that a Kentucky State Police Trooper presented flawed toxicological evidence to the jury, but Dr. Smock also admits he is *assuming* the Trooper testified (he did). *Id.* at 58-59. Dr. Smock admits that he does not have a witness list and does not know what, if any, other witnesses might have testified before the Boyd County Grand Jury. *Id.* Dr. Smock testified that transcripts of grand jury presentations do exist, but he has not bothered to actually review any transcript in this instance. *Id.* at 59.

Permitting Dr. Smock (or Plaintiff's accident reconstructionist Joseph Stidham)[5] to criticize the presentation of evidence to the Boyd County Grand Jury or to speculate about what

---

[5] Plaintiff's accident reconstruction expert Joseph Stidham also offers opinions critical of the prosecution of Hazelwood in state court and speculation about what indictment *might* have been returned in the alternative.

12

indictments the prosecutor failed to obtain improperly exceeds the scope of this case. This expert opinion testimony should be excluded for this reason as well – it is inappropriate subject matter for this trial. FED.R.EVID. 702 only permits expert opinion testimony where it "will help the trier of fact to understand the evidence or to determine a fact in issue." Presenting witness testimony to second guess prosecutors and law enforcement's treatment of would-be criminal charges against Hazelwood or suggesting that Hazelwood *should be* indicted or charged criminally is not an issue in this case and it would confuse the jury about their job in this civil case.

Further, FED.R.EVID. 403 excludes even relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Here, presenting criticisms or opinions about the crimes that were never charged or prosecutors' mistakes in the indictment process would be prejudicial to Defendants by suggesting Hazelwood had inappropriately or been lucky to avoid criminal charges and should therefore be punished here; it misleads the jury by unnecessarily injecting criminal issues into this civil case and asking the jury to consider whether, as Plaintiff Goustas would apparently argue, that Hazelwood *did* commit a crime he was never charged with committing.

This court should not allow a federal jury in this case to second-guess a state prosecutor or the Boyd County Grand Jury working in the state court system. Allowing experts or any witnesses to tread into the realm of *what should have happened* with respect to the presentation of evidence to a grand jury raises many issues that need not be decided in this case. For example, if the court permits these opinions, will the court also allow Defendants to offer rebuttal evidence, for example by subpoenaing the prosecuting Commonwealth's attorney to testify and defend her presentation of evidence to the Boyd County Grand Jury? To delve into *why* grand jurors declined to indict?

To present evidence about the prosecutor's decision to charge or not charge? These are clearly not issues that need to be argued and decided here nor are they questions that *should* be decided in this car accident case.

Goustas's experts' opinions criticizing the grand jury's declining to indict Hazlewood and/or the prosecutor's presentation of evidence to the grand jury should be excluded entirely from trial in this civil case. Goustas's experts are unqualified to offer those opinions and there are unfairly prejudicial, irrelevant, confusing, and misleading to the jury.

### IV.     CONCLUSION

Based on all of the above, Plaintiff's expert Dr. Smock should be excluded from testifying at trial. In the alternative, Dr. Smock should be prohibited from offering the specific opinions discussed herein. His opinions are unreliable and not based on sufficient facts or data as required by FED.R.EVID. 702.

/s/ R. Morgan Salisbury
Judd R. Uhl (89578)
R. Morgan Salisbury (94922)
LEWIS BRISBOIS BISGAARD & SMITH LLP
250 East Fifth Street, Suite 2000
Cincinnati, OH 45202
judd.uhl@lewisbrisbois.com
morgan.salisbury@lewisbrisbois.com
*Attorneys for Third-Party Defendant Hendrix-ISA, LLC and Counterclaim Defendant Terry Hazelwood*

**CERTIFICATE OF SERVICE**

      I certify that a copy of the foregoing has been sent via electronic mail this 15th day of March 2024 to:

Kyle R. Salyer, Esq.
Morgan, Collins, Yeast & Salyer
P.O. Box 2213
455 2nd Street
Paintsville, KY 41240
kyle.salyer@kentuckycourage.com
*Counsel for Plaintiff Andreas A. Goustas,*
*Administrator of the Estate of George Goustas*

                                      /s/ R. Morgan Salisbury
                                      Judd R. Uhl (89578)
                                      R. Morgan Salisbury (94922)