**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND**

| | |
|---|---|
| ANDREAS A. GOUSTAS, administrator of the Estate of George Goustas, | CASE NO. 0:22-CV-013-KKC |
|     **Counterclaimant and Third-Party Plaintiff,** | |
| **v.** | **OPINION and ORDER** |
| HENDRIX-ISA, LLC, | |
|     **Third-Party Defendant,** | |
| **and** | |
| TERRY HAZELWOOD, | |
|     **Counterclaim Defendant.** | |

*** *** ***

This matter is before the Court on Third-Party Defendant Hendrix-ISA, LLC ("Hendrix") and Counterclaim Defendant Terry Hazelwood's (collectively, "Defendants") Renewed Motion for Partial Summary Judgment (R. 97). Now that this matter is fully briefed, it is ready for review. For the following reasons, the Defendants' Motion is GRANTED IN PART and DENIED IN PART.

## I.  FACTUAL BACKGROUND

This action arises out of a fatal car accident that took place on I-64 in Boyd County, Kentucky on May 3, 2020. (R. 98 at 2.) The two-vehicle collision occurred at approximately 1:16 a.m. in the right eastbound lane, in which Defendant Terry Hazelwood's tractor trailer collided with Decedent George Goustas' sedan. (R. 97 at 3.) According to the Estate of George Goustas ("Plaintiff") at the time of the accident, Hazelwood was driving 76 miles per hour in a 55 mile per hour construction zone. (R. 98 at 2.)

The parties disagree as to whether Goustas had his lights on at the time of the accident, as well as whether Goustas was completely stopped in the lane or moving slowly. Regardless, Hazelwood crested a hill while traveling through a construction zone, attempted evasive maneuvers to avoid Goustas, and ultimately collided with the rear of Goustas' sedan in the right lane. As a result, Hazelwood was injured and Goustas died from the injuries sustained in the collision.

Two Kentucky State Police Officers investigated the accident. (R. 97 at 4.) Sergeant Forest Newsome and Trooper Tyler Daniels testified that they personally observed no signs or symptoms of impairment from Hazelwood. (*Id.*) No fines were levied, no arrests were made, and Hazelwood was never indicted for any crime relating to the accident. (*Id.*) Drug tests taken after the accident later revealed traces of methamphetamine and amphetamine in Hazelwood's system (R. 74-1) and cocaine metabolites in Goustas' system. (R. 68-1 at 3.)

Hazelwood then initiated this action against the Plaintiff, but his personal injury claims have since been resolved. The only claims remaining in this action are Plaintiff's counterclaim against Hazelwood for the wrongful death of Goustas and a third-party claim against Hendrix, Hazelwood's employer at the time of the accident. Plaintiff's claims against Defendants include: (1) negligence; (2) negligence per se; (3) vicarious liability; (4) negligent maintenance; (5) negligent hiring, training, and retention; and (6) gross negligence/punitive damages. (*See* R. 21.) Defendants have filed a motion for partial summary judgment, seeking summary judgment on Plaintiff's claims for punitive damages and negligent hiring, training, and retention.

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

2

as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court must "determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993). Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

### III. ANALYSIS

The Defendants move for partial summary judgment on the Plaintiff's punitive damages and negligent hiring, training and supervision claims. In short, the Defendants argue that there is insufficient evidence that Hendrix was negligent or grossly negligent in its hiring, training, or retention of Hazelwood as an employee. (R. 97 at 7.) The Defendants also argue that Plaintiff has not presented sufficient evidence to meet the gross negligence standard required for punitive damages. (*Id.*) The Court will address each argument in turn.

#### A. Negligent Hiring and Retention Claim

Goustas alleges that Hendrix was negligent for hiring and retaining Hazelwood. (R. 49 at ¶ 31). The Defendants argue that there is no evidence that Hazelwood was unfit for his position. (R. 97 at 17).

Since this action is within the Court's subject-matter jurisdiction via diversity of citizenship of the parties, Kentucky law governs the disposition of this Motion. Kentucky recognizes that claims for negligent hiring, negligent training, negligent supervision, and negligent retention are four viable and distinct tort claims. *Allgeier v. MV Transp., Inc.*, Nos.

3

2010-CA-001907-MR, 2010-CA-001921-MR, 2012 Ky. App. Unpub. LEXIS 1019, at *27 (Ct. App. May 11, 2012).

Under Kentucky law, to prevail on a claim of negligent hiring or retention, "the plaintiff must prove (1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Ritchie v. Turner*, 559 S.W.3d 822, 842 (Ky. 2018).  In essence, "an employer can be held liable when its failure to exercise ordinary care in hiring or retaining an employee creates a foreseeable risk of harm to a third person." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 735 (Ky. 2009) (quoting *Oakley v. Flor-Shin, Inc.,* 964 S.W.2d 438, 442 (Ky. App. 1998)). Foreseeability turns on what the employer knew at the time of the alleged negligence. *Id.*

### i.  Negligent hiring

The record does not support a negligent hiring claim. First, the record reflects that Hendrix did not hire Hazelwood. (R. 99 at 11.) Hendrix and Hazelwood's previous employer merged companies in 2015. (*Id.*) After the merger, Hendrix decided to keep Hazelwood because he was "a reliable driver." (*Id.*)

Even if the Court were to construe the merger as Hendrix "hiring" Hazelwood, the Plaintiff does not present sufficient evidence to show that at the time he was hired, he was unfit for the job.  When the companies merged in 2015, Hendrix would have known of (1) his prior DUI conviction and (2) driving record. These factors did not legally disqualify him from operating a commercial vehicle. His license was valid, his two-year DUI suspension had expired, and he passed a random drug test. (R. 97 at 17–18). Hendrix's hiring policy only considered criminal history within a 36-month window and there is no evidence that Hendrix violated any federal or state regulation by employing him. (*Id.*)

4

There is no indication that Hendrix knew or should have known Hazelwood was unfit when he was hired. There is insufficient evidence that prior to 2015 Hendrix would have known that Hazelwood presented an unreasonable risk of harm to others. In fact, Hendrix's decision to keep Hazelwood on staff when it merged with his previous company was due to his record of being reliable. (R. 99 at 11.) Without evidence that Hendrix failed to exercise ordinary care at the time of hiring, no reasonable jury could find the company negligent. *Ritchie*, 559 S.W.3d at 842. Summary judgment in favor of Hendrix is therefore appropriate on the negligent hiring claim.

### ii. Negligent Retention

The record concerning negligent retention, however, presents a substantially different picture. While Defendants attempt to downplay Hazelwood's driving record as "minor traffic violations and a single DUI years before his employment" (R. 99 at 12), the undisputed evidence reflects a persistent pattern of unsafe driving. Viewing the evidence in the light most favorable to Goustas, a reasonable jury could find that Hendrix knew or should have known that continuing to employ Hazelwood posed a foreseeable risk of harm to other drivers. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Hazelwood's driving record while employed by Hendrix included at least nine driving-related infractions between 2015 and 2020. (R. 98 at 20–21.) Hazelwood was hired on January 20, 2015. (*Id.* at 19.) That year he was involved in three driving incidents: failure to obey a highway sign, a crash, and an unauthorized vehicle violation. (*Id.* at 20.) In 2016, Hazelwood committed two more violations: failure to maintain and improper driving. (*Id.*) In 2017, he had a seatbelt violation and in 2018 he got into another accident. (*Id.*) In 2019, he was cited for a lane violation. (*Id.*) Most telling, on February 24, 2020, less than three months before the fatal crash, Hazelwood was cited for speeding in a work zone. (*Id.*)

5

This accumulation of similar violations, especially considering the fatal crash, supports a finding that Hendrix was on notice that Hazelwood's driving presented a safety problem. A reasonable jury could conclude that an ordinary employer would have recognized that repeated violations for unsafe driving, speeding, and lane deviations indicated unfitness for commercial driving. Retaining such an employee after years of documented infractions could be seen as creating an unreasonable and foreseeable risk to other drivers. Given this record, a reasonable jury could conclude that Hazelwood's ongoing misconduct made him unfit, that Hendrix knew or should have known as much, and that its continued retention of him proximately caused Goustas' harm. Because the Plaintiff has produced sufficient evidence of a causal nexus between Hendrix's failure to act and the foreseeable risk of injury, summary judgment must be denied as to the negligent retention claim.

### B. Punitive Damages

The Plaintiff seeks punitive damages on all claims. (R. 49 at 5.) Under Kentucky law, the recovery of punitive damages is governed by Kentucky Revised Statute (hereinafter "KRS") § 411.184. *See, e.g., Stewart v. Estate of Cooper*, 102 S.W.3d 913 (Ky. 2003); *Berrier v. Bizer*, 57 S.W.3d 271 (Ky. 2001). The statute provides that punitive damages can only be recovered if a plaintiff proves by clear and convincing evidence that the defendant acted with "oppression, fraud or malice." KRS § 411.184(2). The Kentucky Supreme Court has held that conduct amounting to common-law "gross negligence" is sufficient for the imposition of punitive damages. *Williams v. Wilson*, 972 S.W.2d 260, 264–265 (Ky. 1998).

Gross negligence has been defined as a "'wanton or reckless disregard for the safety of other persons' such that the offending conduct is so outrageous that malice could be implied from the facts of the situation." *Estate of Presley v. CCS of Conway*, 2004 U.S. Dist. LEXIS 9583, at *11 (W.D. Ky. May 18, 2004) (quoting *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 52 (Ky. 2003)). Thus, to justify punitive damages, "there must first be a finding of failure to

6

exercise reasonable care, and then an additional finding that this negligence was accompanied by 'wanton or reckless disregard for the lives, safety or property of others.'" *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389-90 (Ky. 1985). The Plaintiff does not appear to base its claim for punitive damages on any "oppression" or "fraud" in the Defendants' acts, but on the assertion that Hazelwood's driving at the time of the collision and Hendrix's decision to hire and retain him were grossly negligent. (R. 49 at 5.)

### i. Plaintiff's punitive damages claim against Hazelwood

The Plaintiff's Amended Third-Party Complaint asserts that it is entitled to punitive damages as a result of Defendants' "reckless disregard for the rights, lives, and safety of the traveling public, including Mr. Goustas, that were a substantial factor in causing the crash." (R. 49 at ¶ 32.) The Plaintiff argues that driving 21 miles per hour over the speed limit in a construction zone while under the influence of amphetamines constitutes gross negligence. (R. 98 at 11.) The admissible evidence, however, tells a different story.

Hazelwood testified that upon seeing Goustas' car, he hit the brakes and swerved into the median. (R. 97 at 11.) Physical evidence and officer reports support Hazelwood's testimony. (*Id.*) Plaintiff presents no evidence to the contrary, and any opinion that his reaction time was impaired due to amphetamine use has already been deemed inadmissible. (*See* R. 96.) On this evidence, the only reasonable conclusion a jury could reach is that upon seeing Goustas' parked or slowly moving vehicle, Hazelwood took evasive maneuvers to avoid the collision. (R. 97 at 11.) Although a jury could characterize Hazelwood's speed as negligent, there is simply no evidence that Hazelwood's conduct was "so outrageous" that constituted "'wanton or reckless disregard for the safety of other persons." *Phelps*, 103 S.W.3d at 52.

A plethora of caselaw supports this conclusion. In *Kinney v. Butcher*, the Kentucky Court of Appeals held that driving at ten miles per hour over the posted speed limit and failing to complete a pass before entering a no-passing zone did not amount to gross

negligence and, thus, punitive damages were not warranted. 131 S.W.3d 357, 359 (Ky. Ct. App. 2004). The court found that holding otherwise "would effectively eliminate the distinction between ordinary and gross negligence in the context of automobile accidents." *Id*. The court also opined that "[n]early all auto accidents are the result of negligent conduct, though few are sufficiently reckless as to amount to gross negligence, authorizing punitive damages." *Id*.

Similarly, a court in this District held that an allegation that the defendant had been driving while tired was not enough to justify a claim for gross negligence and a potential award of punitive damages. *Turner v. Werner Enters*., Inc., 442 F. Supp. 2d 384, 386 (E.D. Ky. 2006). Similarly, in *Embry v. Geo Transp. of Indiana*, 478 F. Supp. 2d 914 (E.D. Ky. 2007), the court found that a tractor-trailer driver committed no more than ordinary negligence when he struck a car after having a coughing fit. A court in the Western District of Kentucky also found that an allegation that the defendant's vehicle crossed into the plaintiff's right of way, struck her vehicle, and then pushed it 100 feet before forcing it off the road did not warrant a claim for punitive damages. *See Zachery v. Shaw*, No. 3:12-CV-606-S, 2013 U.S. Dist. LEXIS 54713 at *3 (W.D. Ky. Apr. 15, 2013).

Here, the Plaintiff has not presented sufficient evidence that Hazelwood's driving amounted to a 'wanton or reckless disregard for the lives, safety or property of others.'" *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389-90 (Ky. 1985). Looking to similar cases as this one, no reasonable jury could conclude that Hazelwood's conduct was grossly negligent. Because this high standard is not met, the Plaintiff is not entitled to recover punitive damages from Hazelwood. Ruling otherwise "would effectively eliminate the distinction between ordinary and gross negligence in the context of automobile accidents." *Kinney*, 131 S.W.3d at 359. Accordingly, the Court will grant summary judgment in favor of Hazelwood with respect to the punitive damages claim asserted against him.

### ii.  Plaintiff's punitive damages claim against Hendrix

Plaintiff contends that Hazelwood's "multiple reckless choices combined with Hendrix's decision to hire and retain Hazelwood" is sufficient evidence justifying punitive damages. (R. 98 at 10.) The Defendants strongly contest this, arguing that even if Hazelwood's conduct could be considered grossly negligent, it cannot be liable for punitive damages because it never authorized, ratified, or should have anticipated the conduct. (*Id.* at 14.)

In Kentucky, a plaintiff may seek punitive damages against an employer under two theories: vicarious liability and direct liability. *MV Transp. Inc. v. Allgeier*, 433 S.W.3d 324, 337 (Ky. 2014). Under the vicarious liability theory, punitive damages cannot be assessed "against a principal or employer for the act of an agent or employee unless such principal or employer authorized or ratified or should have anticipated the conduct in question." KRS § 411.184(3); *see also Berrier v. Bizer*, 57 S.W.3d 271, 283 (Ky. 2001) (noting that "Kentucky is the only state with a statute that so broadly limits vicarious liability for punitive damages"). Vicarious liability claims involve the imposition of strict liability on an employer by virtue of its relationship to an employee. *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 735 (Ky. 2009). Because the Court has already concluded that Hazelwood's actions do not rise to the level of gross negligence, Hendrix necessarily cannot be liable for punitive damages on a vicarious liability theory. *Supra* § III.B.i. Because the Plaintiff's claim fails at the first step, it is unnecessary for the Court to consider whether Hendrix authorized or ratified Hazelwood's conduct. KRS § 411.184(3).

The Plaintiff also seeks punitive damages against Hendrix on a direct liability theory, alleging that it was negligent in hiring, training, and retaining Hazelwood. (R. 49 at ¶ 31.) The Plaintiff contends that due to Hazelwood's problematic driving record, Hendrix should not have hired, or at the very least should have fired him by 2016. (R. 98 at 25.) Although a

9

reasonable jury could find that Hendrix was negligent for retaining Hazelwood, the Plaintiff has failed to provide sufficient evidence that Hendrix's decision was "wanton or reckless." *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389-90 (Ky. 1985).

The record reveals that Hendrix instituted policies to encourage safe driving. (R. 98 at 25.) Hendrix took disciplinary action against Hazelwood when he was cited for speeding in a construction zone, on February 24, 2020.   (*Id.*) This is evidenced by of Hendrix's Disciplinary Report that Stripped Hazelwood of his first quarter driver bonus due to the infraction. (R. 98-1 at 2.)

Although Hendrix's decision not to terminate Hazelwood may be negligent, it does not rise to the level of conduct required for punitive damages. Kentucky law reserves punitive damages for behavior that is willful, wanton, or in reckless disregard of the safety of others. *Horton*, 690 S.W.2d at 389-90. Here, the record shows that Hendrix disciplined Hazelwood for his speeding violation rather than ignoring or condoning his conduct. (R. 99 at 13.) Exercising business judgment to retain and discipline an employee for infractions that, while concerning, are not uncommon in the trucking industry does not demonstrate the kind of wantonness or recklessness necessary to sustain a punitive damages claim. Accordingly, summary judgment will be granted in favor of Hendrix on the issue of punitive damages.

## IV.  CONCLUSION

For the aforementioned reasons, the Court hereby ORDERS the following:

1) The Defendants' Motion for Partial Summary Judgment (R. 97) is GRANTED IN PART and DENIED IN PART.

2) The Defendant's Motion (R. 97) is GRANTED with respect to the Plaintiff's punitive damages claim.

3) The Defendant's Motion (R. 97) is DENIED with respect to the Plaintiff's negligent retention claim.

This 30th day of March, 2026.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY